## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **COREY BENJAMIN SUMMERFORD,** | ) )  ) |
| Plaintiff, | ) ) ) **Case No.: 2:16-CV-1607-VEH** |
| v. | ) ) |
| **NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,** | ) ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION**[1]

**I.   INTRODUCTION**

Plaintiff Corey Benjamin Summerford ("Summerford") brings this action under 42 U.S.C. § 405(g). Summerford seeks a review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for supplemental security income ("SSI"). Summerford filed his application on August 6, 2013. After that, Summerford exhausted the administrative

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

remedies available before the Commissioner. This case is now ripe for judicial review under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).

After reviewing the entire record, this Court **AFFIRMS** the Commissioner's decision.

## II. Relevant Background

Summerford was 23 years old at the time of his hearing with the ALJ. (Tr. 27). At that time, he was living with his parents. (*Id.*). His highest level of education is part of the 10th grade, and he does not have a GED. (*Id.* at 25). The vocational expert "didn't identify any work experience." (*Id.* at 43). Summerford claims disability based on his mental health. (*Id.* at 27, 29, 31, 33).

The amended alleged onset date is June 21, 2009. (*Id.* at 10). On August 6, 2013, Summerford filed an application for supplemental security income. (*Id.*). The Social Security Administration denied that application on October 10, 2013. (*Id.*). On April 16, 2015, Administrative Law Judge Ronald Reeves held a hearing. (*Id.*). The ALJ issued his decision on May 8, 2015, which was unfavorable to Summerford. (*Id.* at 10-17). The ALJ determined that Summerford suffers from "panic disorder, anxiety disorder, an obsessive-compulsive disorder." (*Id.* at 12) (emphasis omitted). Summerford also alleged that he suffers from paranoia. (*Id.*). In his opinion, the ALJ found that Summerford's impairments did not meet the severity of the ones included

in the Code of Federal Regulations. (*Id.*) (emphasis omitted). Summerford requested the Appeals Council review his claim. (*Id.* at 1-3). They refused. (*Id.*).

Summerford filed his Complaint in the Northern District of Alabama on September 30, 2016. (Doc. 1). Summerford filed his brief in support of his position on May 22, 2017. (Doc. 12). The Commissioner responded on May 30, 2017. (Doc. 13).

### III. STANDARDS

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

> (1) whether the claimant is currently employed;
>
> (2) whether the claimant has a severe impairment;
>
> (3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
>
> (4) whether the claimant can perform his or her past work; and
>
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## V. FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After considering the record, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since August 6, 2013, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: panic disorder, anxiety disorder, and obsessive-compulsive disorder (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations. He is limited to unskilled, simple, and repetitive work with no production quota. He will benefit from a separate workstation and would perform better around a few familiar co-workers or in a job that could be performed at home. Contact with the public should be on no more than an occasional basis.

5. The claimant has no past relevant work (20 C.F.R. § 416.965).

6. The claimant was born on June 21, 1991, and was 22 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. § 416.963).

7. The claimant has a limited education and is able to communicate in

>       English (20 C.F.R. § 416.964).
>
> 8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. § 416.968).
>
> 9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)).
>
> 10.   The claimant has not been under a disability, as defined in the Social Security Act, since August 6, 2013, the date the application was filed (20 C.F.R. § 416.920(g)).

(Tr. 12-17).

## VI. ANALYSIS

### A. Discounting Treating Psychiatrist Dr. McClure

In his opinion, the ALJ gave "little weight to Dr. McClure's opinions regarding the claimant's mental functional limitations." (Tr. 15). Instead, the ALJ gave greater weight to Dr. Williams, an agency medical consultant. (Tr. 15). Summerford argues this was error. (Doc. 12 at 4) (arguing that "the ALJ failed to properly articulate good cause for according less weight"); (Doc. 12 at 7-8) (arguing that little weight should be given to Dr. Williams because he did not review all the medical evidence). In response, the Commissioner argues that discounting Dr. McClure's opinion was proper because "his own treatment records showed that Plaintiff required only sporadic treatment, had normal mental status examinations, and responded well to

psychotropic medications." (Doc. 13 at 8). Further, the Commissioner argues that the ALJ compared Dr. Williams's opinion with the entire record, and found it consistent with that record. (*Id.* at 10) (noting that "the ALJ reviewed the entire record and reasonably found Dr. Williams' opinion continued to be consistent with the evidence of record when considered in its entirety").

"The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor*, 786 F.2d at 1053; *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir.1985). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart* 357 F.3d 1232, 1240-41 (11th Cir. 2007) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* at 1241 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

In this case, Dr. McClure wrote a letter stating that Summerford was "being treated for major depression, panic disorder with agoraphobia, and obsessive compulsive disorder. (Tr. 305). Dr. McClure opined that "[Summerford] would not

8

be able to work an 8 hour day related to his diagnoses. He is very focused on germs, has panic attacks, and has difficulty leaving his house on a daily basis." (*Id.*). Dr. McClure then completed a Residual Mental Functional Capacity form in which he indicated that Summerford suffered from numerous "marked" and "extreme" impairments. (*Id.* at 306-308).[3]

However, during the hearing, Summerford denied having severe panic attacks anymore. (*Id.* at 40) (Summerford stated: "I used to have very severe panic attacks . . . I don't have those."). Further, Summerford has not been hospitalized overnight since he filed his application for SSI. (*Id.* at 42). He visits the doctor about twice a year. (*Id.*). He denies ever wanting to see the doctor beyond his scheduled appointments. (*Id.*). As the Commissioner points out, there are numerous instances where Dr. McClure's own records do not paint the picture of a severely impaired individual. (*See* Doc. 13 at 9). Summerford admits the less favorable medical records but argues that "[his] condition was quite variable." (*See* Doc. 12 at 7).

Somewhat surprisingly, no party calls attention to Dr. McClure's record from May 1, 2014, where he comments on Summerford's social history. (Tr. 303). Dr. McClure's handwriting is difficult to read, but it appears that he stated: "Need to look

---

[3] Summerford notes that the Vocational Expert testified, in a hypothetical, that someone with many of these same "marked" and "extreme" impairments could perform no job. (*See* Doc. 12 at 5); (Tr. 47-48).

for work." (*Id.*). Then, less than eight months later, Dr. McClure states that Summerford "would not be able to work an 8 hour work day." (*Id.* at 305). The Court finds that the ALJ's decision to discount Dr. McClure's contradictory opinions is supported by substantial evidence.

Finally, while Dr. Williams did not evaluate the entire record,[4] the ALJ determined that Dr. Williams's opinions are consistent with the record. (*Id.* 15). Summerford suggests that Dr. Williams's opinion is devoid of "specific reasons for his opinions." (*See* Doc. 12 at 7). However, this is not a fair interpretation. As an example, Dr. Williams provides some explanation regarding credibility in the medical portion. (Tr. 56-57). Alternatively, even if Dr. Williams were to consider evidence from after 2013, it is not clear that it would change his opinion. (*See* Doc. 13 at 10). Summerford does not cite to any specific evidence that indicates that Dr. Williams's opinion would have changed. (*See* Doc. 12 at 7-8). As the Court described above, much of this medical evidence is not that helpful to Summerford. (*See e.g.,* Tr. 302, 303). In sum, the ALJ's decision to credit Dr. Williams's opinion is supported by substantial evidence.

---

[4] Dr. Williams only considered some medical evidence from 2010 and 2013 and an adult function report. (Tr. 53-55); (*See* Doc. 12 at 7). It appears he considered just one report from Dr. McClure. (Tr. 53); (*See* Doc. 12 at 7).

B.  ALJ's Credibility Determination

The Eleventh Circuit in *Hale* stated:

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. *MacGregor*, 786 F.2d at 1054. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Further, "[i]t is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (citing *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-488 (1951)).

In his opinion, the ALJ determined that "[Summerford's] statements concerning the intensity, persistence and limiting effects of [his impairments' symptoms] are not entirely credible." (Tr. 14). Summerford argues this was in error and that "[t]he ALJ's rationale is based upon a mischaracterization of both the medical and opinion evidence." (Doc. 12 at 8). In response, the Commissioner argues that "the ALJ reasonably found that Plaintiff was not credible because the medical evidence revealed sporadic treatment, no hospital admissions after filing for SSI,

11

normal mental status examinations, and effective use of psychotropic medications to control his symptoms." (Doc. 13 at 12) (citing Tr. 15-16).

Contrary to Summerford's contentions, the ALJ did not disregard the longitudinal medical treatment. (Tr. 14-16). Summerford quotes *Chambers v. Astrue* for support. (*See* Doc. 12 at 9) (quoting *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009). The court in *Chambers* stated that "[t]he ALJ cannot pick and choose among a doctor's records to support his own conclusion." *Chambers*, 671 F. Supp. 2d at 1258. However, that is not what the ALJ did in this case.

Upon reviewing the longitudinal medical record, the Court determines that it supports the ALJ's decision. Summerford specifically points to his emergency room visits in 2010. (*See* Doc. 12 at 9). However, the ALJ considered those visits. (Tr. 14-15). Summerford also points to his treatment with Dr. McClure. (*See* Doc. 12 at 9-10). The ALJ properly considered that treatment as well. (Tr. 15-16). The ALJ came to different conclusions than Summerford, but that does not mean that he "mischaracterized the evidence" or that his "interpretations of the records is irrational." (*See* Doc. 12 at 9-10). In conclusion, the ALJ's credibility determination is supported by substantial evidence.

## VII. CONCLUSION

Based upon the Court's evaluation of the evidence and the parties'

submissions, the Court finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

**DONE** and **ORDERED** this 9th day of November, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge